UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

SYLVESTER MEAD                           CIVIL ACTION NO. 10-cv-1084

VERSUS                                   JUDGE HICKS

WARDEN, LOUISIANA STATE                  MAGISTRATE JUDGE HORNSBY
PENITENTIARY

**REPORT AND RECOMMENDATION**

**Introduction**

A Caddo Parish jury convicted Sylvester Mead ("Petitioner") of one count of public intimidation of a public officer. The State pursued an enhanced sentence based on Petitioner's habitual offender status and, after several trial court and appellate proceedings, Petitioner was adjudicated a third offender and sentenced to life imprisonment without the benefit of probation, parole, or suspension of sentence. Petitioner filed several appeals, writ applications, and post-conviction applications that fill 13 volumes. He now seeks federal habeas corpus relief based on eight grounds. For the reasons that follow, it is recommended the petition be denied.

**Background**

Petitioner attached a copy of the trial transcript to one of his many filings. Doc. 13. Madeline Mead, Petitioner's wife, testified that in October 2000 she had been living on Jefferson Paige Road for about six years, the last two married to Petitioner. They lived there with Madeline's three daughters (ages 15, 8, and 2), the youngest of which was fathered by

Petitioner. After spending a Saturday with the children, Madeline and Petitioner attended a party in the evening at Petitioner's co-worker's house. Madeline testified that she drank a few beers, and she saw Petitioner drink beer and some gin.

Petitioner drove them home from the party. Madeline got ready for bed, but Petitioner said he was hungry and fried some fish that were in the refrigerator. Petitioner burned the fish, but he brought it in the bedroom to eat. Petitioner tried to wake the two-year-old to feed her some of the fish. Madeline asked Petitioner not to do that, and he got angry and began yelling that she could not tell him what to do with his baby. He then began making accusations that the child was not his. Madeline refused to take the bait, said she was not going to play that game, and turned over to go to sleep. Petitioner yelled that she could not turn away from him, and he jumped on the bed. Madeline left the room but soon saw Petitioner coming down the hallway toward her yelling, with a butcher knife in his hand.

Madeline yelled for her oldest daughter, Georgiana, to call 911. Petitioner grabbed Madeline by the throat, but he let go when he heard Georgiana on the phone with the police. Petitioner went into the girl's room, hung up the phone, and told her she was not calling anyone. Petitioner returned his attention to Madeline, but they soon heard sirens approaching. Petitioner put on his shoes and told Madeline that he was going to show them that they could not tell him what to do in his house.

Madeline testified that a policeman came to the door. Petitioner answered it, and the officer asked if he was Sylvester Mead. Petitioner said he was, and the officer asked him to

step outside to talk. Petitioner said that he was not going anywhere, and the officer could not make him go. The officer then rushed Petitioner, grabbed him by the arms, put Petitioner's arms behind his back, and took him outside.

Georgiana offered similar testimony about Petitioner returning home drunk and frying fish. She said that when Petitioner and Madeline began arguing, she heard Petitioner say, "I'll kill you and I'll kill all y'all in this house." Madeline asked Georgiana to call 911. She was making the call when Petitioner snatched the phone from her hand and slammed it down. The operator called back immediately, and Georgiana explained what was happening and asked the police to hurry. Georgiana met the policeman when he arrived, and she saw the officer disarm Petitioner of the knife, handcuff him, and take him outside. The officer tried to read Petitioner his rights, "but he was steady talking and steady talking about what he was going to do to the police officer."

Shreveport police officer Charles Rose testified that he arrived at the home after 2:00 a.m. Georgiana was outside and told him that her stepfather had hit and choked her mother and threatened both of them with a knife. Rose went to the back door of the home, which was open, and he saw Petitioner standing in the kitchen. He could see several knives in the kitchen, so he asked Petitioner to come outside and talk. Petitioner refused, so Rose grabbed him by the arm, brought him outside, and handcuffed him. Rose placed Petitioner in his car under the watch of another officer, who had just arrived, and went back to interview the

witnesses. He decided there was probable cause to arrest Petitioner for simple battery and aggravated assault.

Officer Rose testified that, while they were at the residence, Petitioner insisted he had done nothing wrong, said he was the man of his house, and kept asking for the name and badge numbers of the two officers. Rose said they provided him that information several times, which can be heard on an audio tape made from a recorder in the patrol car. Petitioner's physical resistance was only slight, but he was very combative in his language. On the ride to the police station, Petitioner told Officer Rose, "I should have shot you this time," and warned that Rose better bring an arsenal if he returned. Rose replied that Petitioner was threatening an officer and had just earned himself another charge. Petitioner continued to demand names and badge numbers. After arriving at the station, he said something to the effect of, wait about two more hours and then come out there again. The recording from the patrol car was played for the jury.

The jury returned a unanimous verdict of guilty of violating La. R.S. 14:122, which defines public intimidation as the use of violence, force or threats upon a public officer or employee with the intent to influence his conduct in relation to his position, employment or duty. Trial judge Leon Emanuel found the evidence insufficient to support the verdict and granted a defense motion for post-verdict judgment of acquittal. The State appealed, and the appellate court reinstated the conviction and remanded for sentencing. Tr. 30-35. State v. Mead, 823 So.2d 1045 (La. App. 2nd Cir. 2002).

The State filed an habitual offender bill of information to seek an enhanced punishment for the conviction. It produced copies of bills of information, court minutes, and fingerprints to show that Petitioner had previously been convicted of simple burglary and aggravated battery so that Petitioner was a third-felony offender. The statute mandated a life sentence if Petitioner was adjudicated as charged.

Judge Emanuel initially ruled that one of the convictions was outside the applicable statutory period so that Petitioner was only a second-felony offender. The appellate court rejected the trial judge's construction of the timeliness issue and held that the "evidence proves defendant is a third-felony offender." The matter was remanded for sentencing. The appellate court noted that the sentencing, though the statute mandated a life sentence, would be subject to the test in State v. Dorthey, 623 So.2d 1276 (La. 1993), which allows a defendant to show he is exceptional, and that because of unusual circumstances he is a victim of the legislature's failure to assign the sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. Tr. 1439.

The trial judge conducted a hearing, after which he repeated his belief that Petitioner was not an actual threat to the police officer. He also opined that a life sentence was out of order under the circumstances, but he had no confidence that a contrary ruling would withstand appellate review. Accordingly, he imposed the statutory sentence of life imprisonment. Tr. 311-14. The appellate court affirmed the third-felony offender

adjudication, but it viewed the trial judge's statements at sentencing as indicating he did not conduct a proper analysis to determine whether the mandatory sentence was constitutional under the Louisiana Constitution and principles set forth by the Louisiana Supreme Court in cases such as Dorthey and State v. Johnson, 709 So.2d 672 (La. 1998). Accordingly, the case was remanded for reconsideration of the sentence. Tr. 489-501. State v. Mead, 927 So.2d 1259 (La. App. 2nd Cir. 2006).

An evidentiary hearing was held to reconsider the sentence. Petitioner elected to represent himself, with the aid of standby counsel. The trial judge again sentenced Petitioner to life. The appellate court again remanded the matter so the trial court could supplement the record regarding the sufficiency of Petitioner's waiver of counsel and request for self-representation. Tr. 786-91. State v. Mead, 988 So.2d 740 (La. App. 2nd Cir. 2007). The trial court held a hearing, ruled that Petitioner did not properly waive counsel, and granted a new hearing with appointed counsel. Petitioner and three other witnesses testified at the lengthy hearing. Tr. 994-1097. Judge Emanuel issued a written decision in which he reviewed the testimony of the witnesses and found, despite his view that Petitioner was not guilty or deserving of a life sentence, that Petitioner had not demonstrated that he fell within the rare circumstances under which Louisiana law allowed the court to depart from the statutory sentence. Tr. 804-13. The appellate court affirmed the sentence. Tr. 2477-88. The Supreme Court of Louisiana denied writs without comment. Tr. 2697. State v. Mead, 16 So.3d 470 (La. App. 2nd Cir. 2009), writ denied, 31 So.3d 388 (La. 2010).

This summary is only the most basic outline of Petitioner's convoluted procedural history. He pursued a number of other writ applications and appeals before his conviction and sentence became final. He has also filed at least three applications for post-conviction relief, with various related writ applications. Counsel for the State has done a good job of explaining the history of those various proceedings.

**Exhaustion of State Court Remedies**

A writ of habeas corpus "shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). The exhaustion requirement reflects a policy of federal-state comity designed to give the State an initial opportunity to pass upon and correct alleged violations of its prisoners' federal rights. Anderson v. Johnson, 338 F.3d 382, 386 (5th Cir. 2003).

The requirement is satisfied if the federal issue has "once been properly presented to the highest court of the state" either on direct appeal or through a post-conviction application. Sones v. Hargett, 61 F.3d 410, 415 (5th Cir. 1995). That includes presenting the issue in a petition for certiorari to state's high court, even if that court affords only discretionary review. O'Sullivan v. Boerckel, 119 S.Ct. 1728 (1999). The federal court asks not only whether a prisoner has exhausted his state remedies, but also whether he has properly exhausted those remedies, i.e., whether he has fairly presented his claims to each level of the state courts. Id.

To fairly present the claims, the applicant must present his claims in a procedurally correct manner according to the rules of the state courts. Carty v. Thaler, 583 F.3d 244, 254 (5th Cir. 2009). If he, for example, includes a new claim in a discretionary writ application filed in the state supreme court, he has not properly exhausted. Castille v. Peoples, 109 S.Ct. 1056 (1989). A corollary to the exhaustion requirement is the procedural default doctrine's general principle that federal courts will not disturb state court judgments based on adequate and independent state law procedural grounds absent a showing by the prisoner of cause and prejudice to overcome the default. Drekte v. Haley, 124 S.Ct. 1847, 1851-52 (2004).

The State has argued that Petitioner (1) did not exhaust his state court remedies or (2) is procedurally barred with respect to several of the claims on which he seeks federal habeas relief. Despite Petitioner's repetitive and voluminous filings in the state court, there is significant doubt that he properly presented any of the challenged claims at each level of the state courts. Petitioner has not come forward in response to the State's challenge and clearly articulated the appellate path of each claim. Some of the state court denials rely on procedural defenses. Given the complexity of the record and the relative lack of merit of the claims, the undersigned will proceed to address the merits, but with the observation that any possible meritorious claim would have to also overcome the exhaustion and related procedural bar defenses raised by the State.

**Habitual Offender Adjudication**

Petitioner's first and eighth claims attacks his habitual offender adjudication on the grounds the deputy clerks who prepared the minutes related to the prior convictions were not present at the hearing for cross-examination, and the transcripts of the Boykin waivers and guilty pleas on the prior convictions were lost and not subject to appellate review. The two prior convictions relied on by the State were simple burglary in Case No. 130,154, and aggravated battery in Case No. 174,037. The State submitted in evidence copies of the bills of information, the defendant's fingerprints on the same, and a certified copy of the minutes in each case. A fingerprint expert took Petitioner's fingerprint at the hearing and testified that he was the same person convicted of the prior offenses. Defense counsel objected that there was no witness to authenticate the minutes and no mention in the minutes that Petitioner had been fully Boykinized and understood his constitutional rights. Tr. 1394-1401. The judge took judicial notice of the minutes that came from the same Caddo Parish court and ultimately adjudicated Petitioner a third-felony offender.

Petitioner argued on appeal that there was not proper documentation to adjudicate him a multiple offender because the Boykin transcripts had been lost. The state appellate court noted that under the Louisiana Shelton decision the State had the initial burden to prove the existence of the prior guilty pleas and that Petitioner was represented by counsel when they were taken. Once that burden was satisfied, Petitioner was required to produce affirmative evidence showing an infringement of his rights or a procedural irregularity in the taking of

the pleas. The appellate court noted that the minutes showed Petitioner appeared in court with counsel and entered a guilty plea to each of the prior felonies after being informed of his rights per Boykin. Petitioner offered nothing to counter that evidence, so the adjudication was affirmed. Tr. 496-500. The minutes in the record support that decision. Tr. 24 and 26.

The State was not obligated to introduce the complete transcripts of the prior pleas at the hearing, and defense counsel did not raise any particular challenges based on matters in those transcripts. In any event, habeas relief on this issue is foreclosed by Lackawanna County District Attorney v. Coss, 121 S.Ct. 1567 (2001). That decision holds that habeas relief is unavailable to a state prisoner when the prisoner challenges a current sentence on the ground that it was enhanced based on an allegedly unconstitutional prior conviction for which the prisoner is no longer in custody. There is an exception if counsel was not appointed in connection with a prior conviction, but the records in this case show that Petitioner was afforded counsel when he pleaded guilty to the prior felonies. No habeas relief is available on these claims.

**Charging Instrument**

Petitioner claims the trial court lacked jurisdiction because the record does not include a signed affidavit that accused Petitioner of the crime. No such affidavit was required to institute a charge for the crime. The assistant district attorney signed a bill of information (Tr. 1197) that was proper to institute the charge under state law. La. C.Cr.P. Art. 382. In

addition, the State objects that this is one of the claims that Petitioner did not present to the state courts on direct or collateral review. No relief is permitted on this claim.

**Juror Wanda Robertson**

Petitioner stated in a post-conviction application (Tr. 2788) that juror Wanda Robertson was unfit to serve because he found out during the course of trial that Ms. Robertson was the daughter of one of his old "lady friends, Dorothy Robertson," and he did not know who the juror was until her brother entered the courtroom. Petitioner made a conclusory assertion in another post-conviction filing that Ms. Robertson knew him before trial and was prejudiced. Tr. 2860. Petitioner stated in another filing that Ms. Robertson "did discuss the case with her brother before the verdict was reached."

The State challenges whether this claim was properly exhausted in the state courts, and Petitioner has not identified the steps taken in the trial court, appellate court, and Supreme Court by which he fairly and properly presented this claim to each of them. The State also raises a procedural bar objection because the trial court rejected the claim because it had not been pursued on appeal and had been inexcusably omitted from prior applications. The procedural bar defense is likely valid, but the claim can be easily denied on the merits.

Petitioner has not articulated any evidence to show that the juror was aware of his alleged relationship with her mother. If Petitioner did not know her, then it is equally likely she did not know him. There is no evidence whatsoever that the juror knew Petitioner, was biased against him as a result, or discussed the case with her brother. The Constitution

requires that defendant have a panel of impartial, indifferent jurors. Murphy v. Florida, 95 S.Ct. 2031, 2036 (1975). Petitioner has presented nothing but one or two-sentence conclusory assertions that the juror was biased against him. The court need not blindly accept speculative and inconcrete claims or hold an evidentiary hearing to explore them. U.S. v. Edwards, 442 F.3d 258, 268 n. 10 (5th Cir. 2006). No relief should be granted on this claim.

**Admission of Video Tape**

Petitioner argues that the video tape from the patrol car should not have been played for the jury because a significant portion of it was missing, depriving him of a fair trial. The State responds that this claim was raised in the trial court in a post-conviction application (Tr. 2664) but apparently not pursued in the higher state courts. The trial court rejected the claim as procedurally barred because it was not pursued during earlier proceedings, giving rise to a procedural bar defense that has been raised by the State to accompany it objection to the lack of exhaustion. Those defenses are likely valid, but the claim can be denied on the merits.

There is nothing in the transcript of the trial to support Petitioner's claim. Officer Rose testified that he had reviewed the audio and video tape taken from the car, that it was a fair and accurate portrayal of what happened that night, and it had not been edited or altered in any way. The prosecutor asked permission to play the tape, the court asked if there were any objections, and defense counsel said, "No objection." After the tape was played, Officer

Rose was again questioned and testified that the tape had not been edited or altered in any way.

During cross examination, defense counsel played, without objection, a copy of the tape that was provided to him during discovery. He said his copy sounded a bit different, but he was "not suggesting in any way that anybody's trying to put anything over (on) anybody." He opined that his tape included a track recorded by a microphone in the car and a separate track recorded by the microphone on the officer's body, with the second track for some reason not included on the version played earlier. Counsel's two-track tape was then played, with breaks along the way to question Officer Rose about the events.

Petitioner has not articulated any specific facts or offered any evidence to support his assertion that portions of the video tape were deleted. Defense counsel never suggested any such deletion despite his obvious careful attention to the details of the recording. In any event, Petitioner was convicted based on what the tape showed him say, and more video tape would not have made him any less guilty of making those comments. Habeas relief is not permitted on this conclusory and unsupported claim.

**Peremptory Challenges**

Petitioner makes a conclusory assertion that the record does not demonstrate that he had the use of all available peremptory challenges, and the State had more than the law allowed. The State argues that Petitioner did not raise this claim during direct or collateral review in the state courts so did not properly exhaust it. Petitioner responds that he raised

the claim on direct appeal in the Supreme Court, but raising an issue for the first time in the Supreme Court is not proper exhaustion.

The claim also lacks merit. The transcript of the voir dire is in the record (Tr. 2908-3020), and Petitioner has not cited any portion of it to support his claim. The minutes (Tr. 26) reflect that the six-person jury was chosen, with the State using two peremptory challenges and the defense using four. An alternate juror was selected, and neither side used a peremptory challenge. There is no factual basis for this claim.

**Excessive Sentence**

At the time of Petitioner's offense, the habitual offender law provided that if the third felony or either of the two prior felonies was a crime of violence then the person shall receive a natural life sentence. After Petitioner committed the crime, but before conviction and sentencing, the law was amended to require a life sentence only where the third felony and the two prior felonies were crimes of violence. The more lenient sentencing scheme did not, however, apply in Petitioner's case. Petitioner nonetheless argued throughout the state court proceedings that he should receive a downward departure from the mandatory life sentence based on consideration of this change in the law, the nature of his crime, evidence that he had been a good worker who cared for his family, and that a substance abuse problem that contributed to his conviction. On the other hand, Petitioner showed his propensity for violence even while incarcerated on this charge by sending harassing letters to his wife.

The appellate court, in the last reasoned state court decision, rejected the excessive sentence claim based on applicable Louisiana sentencing law. Tr. 2478-88. The appellate court spoke to the issue only in terms of state law, but Petitioner did invoke the Eighth Amendment to the U.S. Constitution in his appellate brief and in his petition to the Supreme Court of Louisiana that followed. Tr. 1112, 2503. It thus appears Petitioner exhausted a federal claim, but the arguments in his federal petition are not clearly based on federal law. He generically references "Constitution law" and suggests the court should have departed from the mandatory sentence to the minimum term of confinement based on the non-violent nature of his crime, the amendment to the habitual offender statute, and his successful completion of rehabilitation programs while incarcerated. Even if it is assumed Petitioner properly exhausted and presents a federal attack on his sentence, the claim does not merit habeas relief.

When a federal claim has been presented to a state court, and the state court denies relief, it is presumed the state court adjudicated the claim on the merits even if the state court did not fully explain its reasoning. Harrington v. Richter, 131 S.Ct. 770, 784-85 (2011). Petitioner has not offered anything to overcome that presumption. Accordingly, Petitioner's federal claim argued in his briefs to the state courts will be treated as adjudicated on the merits by those courts even though the resulting opinions did not specifically address federal law.

Habeas corpus relief is available with respect to a claim that was adjudicated on the merits in the state court only if the adjudication (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

A state court's decision is contrary to clearly established Supreme Court precedent when it relies on legal rules that directly conflict with prior holdings of the Supreme Court or if it reaches a different conclusion than the Supreme Court on materially indistinguishable facts. Pape v. Thaler, 645 F.3rd 281, 287 (5th Cir. 2011). A state court makes an unreasonable application of clearly established federal law when it identifies the correct governing legal principle from the Supreme Court's decisions but applies it to the facts in a way that is not only incorrect but objectively unreasonable. Renico v. Lett, 130 S.Ct. 1855, 1862 (2010).

The Supreme Court has reviewed a number of lengthy sentences for multiple offenders. The best case for Petitioner is Solem v. Helm, 103 S.Ct. 3001 (1983), which struck down a sentence of life without parole for a man who was convicted of writing a "no account" check for $100 and who had three prior convictions for third-degree burglary, one prior conviction for obtaining money under false pretenses, one prior conviction of grand

larceny, and one prior conviction of third-offense DWI. The majority found the sentence was significantly disproportionate to the crime, and Solem prevailed.

"In other cases, however, it has been difficult for the challenger to establish a lack of proportionality." Graham v. Florida, 130 S.Ct. 2011 (2010). In Harmelin v. Michigan, 111 S.Ct. 2680 (1991) the offender was sentenced to life without parole for possessing a large quantity of cocaine. A closely divided Court upheld the sentence. Another closely divided Court rejected a challenge to a sentence of 25 years to life for the theft of a few golf clubs under California's three-strikes statute. Ewing v. California, 123 S.Ct. 1179 (2003).

The Court in Lockyer v. Andrade, 123 S.Ct. 1166 (2003) reviewed its decisions and rejected a habeas attack on two consecutive terms of 25 years to life for a third-strike conviction. The petitioner had a string of burglary, drug, and property-crime convictions, capped by theft after he stole approximately $150 worth of videotapes. The sentence did not permit habeas relief because it was not contrary to or an unreasonable application of clearly established gross disproportionality principle set forth in Supreme Court holdings. The Court admitted that its precedents in the area were not clear, which makes it quite difficult to obtain habeas relief under the deferential Section 2254(d) standard. A determination of whether a sentence is grossly disproportionate for a particular crime begins by comparing the gravity of the offense and the severity of the sentence. Graham, 130 S.Ct. at 2022. In the rare case in which this threshold comparison leads to an inference of gross disproportionality, the court should then compare the sentence with the sentences received by other offenders in the same

jurisdiction and with the sentences imposed for the same crime in other jurisdictions. Id.; McGruder v. Puckett, 954 F.2d 313, 316 (5th Cir.1992). The court must be mindful that the sentence is imposed to reflect the seriousness of the most recent offense, not as it stands alone, but in the light of the prior offenses. McGruder, supra.

Petitioner was convicted of threatening a police officer following an armed assault on his wife in which he threatened to kill her and everyone in the home. The details of his past felonies are not in the record, but the aggravated battery bill of information charges that Petitioner committed a battery on a woman while armed with a dangerous weapon. Tr. 31. Petitioner also had a prior conviction of armed robbery in 1979, but it fell outside the window to be included in the habitual offender charge. Tr. 345. Petitioner and his counsel argued at length as to many reasons a court may find the departure from the statutory sentence was allowed. But even the trial judge who was very sympathetic to Petitioner's plight found that the law did not permit such a departure. Petitioner presented the case to the state appellate court, which issued a detailed, reasoned opinion that rejected the sentencing argument (although it did not speak directly to any federal challenge). The state court determined after lengthy proceedings that the sentence was not grossly disproportionate to the crime in light of the prior convictions. As in Lockyer, the state court's rejection of the argument was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, so habeas relief is not permitted.

**Ruling on Post-Conviction Application**

Petitioner's final argument is that the trial court ruled prematurely on one of his three post-conviction applications. This claim fails because "infirmities in State habeas proceedings do not constitute grounds for relief in federal court." Rudd v. Johnson, 256 F.3d 317, 319 (5th Cir. 2001). An attack on the state habeas proceeding is an attack on a proceeding collateral to the detention and not the detention itself, which is the issue in federal habeas. Id. at 320. See also Trevino v. Johnson, 168 F.3d 173, 180 (5th Cir. 1999). Accordingly,

**IT IS RECOMMENDED** that the petition for writ of habeas corpus be denied.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within seven (7) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to

proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

An appeal may not be taken to the court of appeals from a final order in a proceeding under 28 U.S.C. § 2254 unless a circuit justice, circuit judge, or district judge issues a certificate of appealability. 28 U.S.C. § 2253(c); F.R.A.P. 22(b). Rule 11 of the Rules Governing Section 2254 Proceedings for the U.S. District Courts requires the district court to issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate may issue only if the applicant has made a substantial showing of the denial of a constitutional right. Section 2253(c)(2). A party may, within fourteen (14) days from the date of this Report and Recommendation, file a memorandum that sets forth arguments on whether a certificate of appealability should issue.

THUS DONE AND SIGNED in Shreveport, Louisiana, this 3rd day of December, 2013.

Mark L. Hornsby
U.S. Magistrate Judge